United States District Court
Southern District of Texas

**ENTERED**

December 20, 2016

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| RODOLFO GARZA, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL NO. 2:16-CV-364 |
| | § | |
| UNIVERSAL HEALTHCARE | § | |
| SERVICES, INC.; dba UHS | § | |
| SUBSIDARIES, INC., | § | |
| | § | |
| Defendants. | § | |

## ORDER

This is a purported class action brought by Plaintiffs Rodolfo Garza et al. ("Plaintiffs") against Defendant Universal Healthcare Services, Inc. d/b/a UHS Subsidiaries. Inc. ("UHS"). Plaintiffs claim that UHS has engaged in fraud, racketeering, extortion, and unfair debt collection practices relating to "unlawful and fraudulent liens" they allege the company has filed against Texas emergency room patients. Dkt. No. 11. UHS denies Plaintiffs' allegations and raises a number of affirmative defenses, including a claim that the Court lacks subject matter jurisdiction over this action. Dkt. No. 17.

Before the Court are UHS's Motion to Strike, Dkt. No. 17 and UHS's Motion to Transfer Venue, Dkt. No. 5.[1] For the following reasons, the Court **DENIES** UHS's Motion to Strike, Dkt. No. 17; and **DENIES** UHS's Motion to Transfer Venue, Dkt. No. 5.

### I.   Procedural Background

Lead Plaintiff Rodolfo Garza filed his original complaint on August 26, 2016. Dkt. No. 1. UHS filed a joint answer and motion to strike three exhibits attached to

---

[1] The Court also recognizes the filing of UHS's Opposed Motion for a Scheduling Conference, Dkt. No. 22, and Plaintiffs' Motion for Leave to File a Second Amended Complaint, Dkt. No. 25, but declines to rule on these motions at present, to allow the parties the opportunity to file related reply and response briefs, respectively, if any.

Garza's complaint on September 21, 2016 pursuant to Federal Rule of Civil Procedure 12(f) and the Federal Rules of Evidence. *See* Dkt. No. 4. On this same day, UHS filed a motion to transfer venue to the McAllen Division of the United States District Court for the Southern District of Texas. Dkt. No. 5. On October 12, 2016, Plaintiffs filed a first amended complaint. Dkt. No. 11. On October 26, 2016, Plaintiffs responded to UHS's motion to strike, Dkt. No. 15, and its motion to transfer venue, Dkt. No. 14. Also on this day, UHS filed an amended answer and motion to strike, Dkt. No. 17, which Plaintiffs responded to on November 4, 2016, Dkt. No. 18. On November 9, 2016, UHS filed its replies to Plaintiffs' response to its motion to strike, Dkt. No. 19, and its motion to transfer venue, Dkt. No. 20. On November 23, 2016 the parties jointly filed a joint discovery/case management plan, Dkt. No. 23, and UHS filed an opposed motion "to set a scheduling conference to establish a scheduling order if this case is not transferred," Dkt. No. 22. Plaintiffs responded to this motion on December 13, 2016. Dkt. No. 24. Finally, Plaintiffs filed a motion for leave to file a second amended complaint on December 14, 2016, Dkt. No. 25, to which UHS must respond by January 4, 2017.

## II.  Jurisdiction

As an initial matter, the Court confirms here its subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. While UHS has not filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), which permits a defendant to move to dismiss for lack of subject-matter jurisdiction, "[f]ederal courts are courts of limited jurisdiction . . . [and] possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). For this reason, "[f]ederal trial and appellate courts have the duty to examine the basis for their subject matter jurisdiction, doing so on their own motion if necessary." *Lewis v. Hunt*, 492 F.3d 565, 568 (5th Cir. 2007) (quotations omitted). In considering whether the Court has subject-matter jurisdiction, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Energy Mgmt.*

*Servs., LLC v. City of Alexandria*, 739 F.3d 255, 257 (5th Cir. 2014) (quoting *Kokkonen*, 511 U.S. at 377. Moreover, a court must "accept as true the allegations and facts set forth in the complaint." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012).

Here, Plaintiffs have alleged claims under 18 U.S.C. §§ 1962 and 1964(c) of the Racketeering Influenced and Corrupt Organizations Act (RICO), and plead subject matter jurisdiction under the federal question statute, 28 U.S.C. § 1331, as well as the diversity statute, 28 U.S.C. § 1332. As to this Court's jurisdiction pursuant to § 1331, the Court finds that it has subject matter jurisdiction as Plaintiffs bring a cause of action under 18 U.S.C. § 1962. The Court also finds it has subject matter jurisdiction over this action pursuant to § 1332. Plaintiffs and UHS are citizens of different states, while the amount in controversy pled here exceeds $75,000. *See* Dkt. No. 11 at 4-5, 30.

### III.  Legal Standards and Analysis

####   a.       Motion to Strike

UHS seeks to strike Exhibits E and F, and Appendix A from Plaintiffs' first amended complaint, Dkt. No. 11. Exhibit E, titled "Moore Law Firm Price-Gouging Clients," is a list of "49 other patients" Plaintiffs anticipate may join the putative class in this action. Dkt. No. 11, Ex. E. Exhibit F is a report prepared by an expert consultant comparing the "actual cost of hospital services" to what the lead plaintiff in this action was charged by UHS. Dkt. No. 18 at 4. Appendix A is a "timeline of contact" between UHS, affiliated entities, and the lead plaintiff. *Id.* UHS argues that all three of these documents should be stricken from Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 10(c) on the basis that they are not "written instruments." Fed.R.Civ.P. 10(c). UHS further argues that these documents are all in any case inadmissible under Rule 12(f), which allows courts to strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed.R.Civ.P. 12(f). Finally, UHS argues that Exhibit E is also impermissible under Rule 9(b), which requires parties to "state with particularity

the circumstances constituting fraud or mistake" in pleadings alleging fraud or mistake. Fed.R.Civ.P. 9(b).

Rule 10(c) states that "a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed.R.Civ.P. 10(c). "Thus documents attached to a complaint are viewed as part of the plaintiff's pleadings." *In re Enron Corporation Securities, Derivative & ERISA Litigation*, 540 F.Supp.2d 800, 808-809 (S.D.Tex. 2007); *Keane v. Fox Television Stations, Inc.*, 297 F.Supp.2d 921 (S.D.Tex. 2004); *U.S. ex rel. Wilkins v. North American Const. Corp.*, 173 F.Supp.2d 601, 617 (S.D.Tex. 2001) ("The court may consider the facts presented in exhibits to the complaint, as well as the factual allegations of the complaint itself.") UHS argues that Exhibits E and F, and Appendix A are not "written instruments" because they represent evidentiary material unrelated to the basis for Plaintiffs' complaint. *See* Dkt. No. 19. UHS also objects that Exhibit F and Appendix A appear to have been created 'after the facts' forming the basis of Plaintiffs' claims occurred. *Id.* at 5-6. The Court disagrees with UHS's analysis, finding that that all three of these documents properly relate to the basis of Plaintiffs' first amended complaint, and so declines to strike them pursuant to Rule 10(c). *See* Dkt. No. 18.

For this reason the Court also declines to strike Exhibit E pursuant to Rule 9(b). The contents of Exhibit E are directly linked to the factual allegations laid out in Plaintiffs' complaint. UHS claims that Exhibit E, which Plaintiffs state identifies patients who may join their action against UHS, "alleges 49 separate instances of fraud with no accompanying circumstances at all." Dkt. No. 19 at 3. Yet according to Rule 10(c), the facts presented in Exhibit E are read in conjunction with the allegations pled in Plaintiffs' amended complaint. In other words, if the amended complaint itself 'states with particularity' the fraud it alleges, which the Court finds it does, this is enough to save Exhibit E. In any case, the patients listed in Exhibit E are incorporated by reference in Plaintiffs' amended complaint, which states that their "personal injury settlements were reduced and/or eliminated by [UHS's] fraudulent and ongoing practices." Dkt. No. 11 at 13.

Finally, the Court declines to strike Exhibits E and F and Appendix A pursuant to Rule 12(f). Motions under Rule 12(f) are "generally disfavored," and the whether to grant such motions is within the discretion of the district court. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1058 (5th Cir. 1982). This Court does not find the contents of Exhibits E and F and Appendix A to be immaterial to Plaintiffs' claims, nor "scandalous" such as to require them to be stricken from Plaintiffs' amended complaint. Rule 12(f) motions "should be granted only when the pleading to be stricken has no possible relation to the controversy" at issue. *See United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012) (citing *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir.1962)). This remedy is simply not appropriate in view of the contents of Exhibits E and F and Appendix A. *See* Dkt. No. 18.

For these reasons, the Court **DENIES** UHS's Motion to Strike, Dkt. No. 17.

### b.      Motion to Transfer Venue

Plaintiffs properly filed their complaint in the U.S. District Court for the Southern District of Texas Corpus Christi Division. "[F]or the convenience of parties and witnesses" and "in the interest of justice," however, a district court may transfer any civil action to any other division where it might have been brought.  28 U.S.C. § 1404(a). "The movant bears the burden of demonstrating a transfer of venue is warranted." *Spiegelberg v. Collegiate Licensing Co.*, 402 F.Supp.2d 786, 789 (S.D. Tex 2005). A motion to transfer venue pursuant to § 1404(a) will only be granted if "the movant shows the transferee venue is clearly more convenient." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (citing to *In re Volkswagen of Am., Inc. ("Volkswagen II")*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc)). An array of "public and private interest factors are relevant when a court is determining if a case should be transferred. *Grant v. C.R. England, Inc.*, Civ. A. No. H-10-30649, 2011 WL 11203 at *4 (S.D. TX. Jan. 3, 2011). The private interest factors that a court considers are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost

of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* A court also considers the following public interest factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)). These factors "apply as much to transfers between divisions of the same district as to transfers from one district to another." *In re Radmax, Ltd.*, 720 F.3d at 288. They are "not necessarily exhaustive or exclusive ... [and] 'none ... can be said to be of dispositive weight.'" *Volkswagen II*, 545 F.3d at 315.

Here, UHS moves to transfer venue within the Southern District of Texas, from the Corpus Christi Division to the McAllen Division. Dkt. No. 5. Plaintiffs are opposed. Dkt. No. 14. As to the threshold question of whether Plaintiffs' case could originally have been brought in the McAllen Division, under 28 U.S.C. § 1391, venue is proper for a corporate defendant like UHS in any judicial district or division in which it is subject to the court's personal jurisdiction. The Southern District of Texas has specific jurisdiction over UHS, and there is no dispute between the parties as to whether this action could initially have been brought in McAllen. Whether transfer is appropriate therefore depends on analysis of the convenience factors set out in § 1404(a). Looking at these factors, the Court finds that UHS has not met its burden to show that the McAllen Division is clearly more convenient than the Corpus Christi Division, and so denies transfer of this action.

### i.  Venue transfer in class actions

As an initial matter, the Court notes that its analysis of § 1404(a)'s convenience factors might potentially be altered here by the existence of a putative class. It appears that no uniform approach exists within this district as to whether courts should approach the convenience of transferring venue with respect to only named plaintiffs, or to an entire putative class. *Webb v. Settoon Towing, LLC*, 2012 WL 5967962 at *3 (S.D.Tex. Nov. 28, 2012) (unpublished opinion). Here, named

Plaintiffs are one resident of Jim Wells County and five residents of Hidalgo County, Texas, who identify potential witnesses they expect to call as located in Corpus Christi, Texas and The Woodlands, Texas. Dkt. No. 11 at 4; Dkt. No. 14 at 8-11. Plaintiffs also reference "at least 49 other patients" already identified by Plaintiffs' counsel that might seek to opt-in to this purported class action, Dkt. No. 11 at 13, and state their belief that the entire putative class might be "composed of at least 20,000 members or more," Dkt. No. 11 at 18. Plaintiffs allege that "proposed class members are located throughout the State of Texas," *id.*, and that their claims relate to patient visits to "UHS owned, leased and/or managed hospital[s] within the State of Texas," *id.* at 16. Thus the Court is faced with the dilemma of whether to assess the convenience of transfer with respect to just the six named Plaintiffs, or with respect to these Plaintiffs and the "at least 49 other patients" already specifically identified as potential class members, or with respect to the total putative class of "at least" 20,000 members Plaintiffs invoke.

The Court acknowledges that principles of judicial economy might in some cases favor accounting for all putative class members in analysis of § 1404(a)'s convenience factors. Motions to transfer venue may be filed at any time, and it is prudent to avoid "a game of venue ping-pong in which a case is transferred back and forth between the forum convenient to the original plaintiff[s] and the forum convenient to most plaintiffs who opt in." *Webb*, 2012 WL 5967962 at *4. At the same time, engaging in speculative § 1404(a) analysis based on guesswork about what the putative class in an action might ultimately look like is itself inefficient—and risks perverting the burden § 1404(a) places on a movant to show that transfer to another venue is "clearly more convenient." *In re Radmax, Ltd.*, 720 F.3d at 288. For this reason, here the Court considers § 1404(a)'s convenience factors primarily with respect to the Plaintiffs actually named in this action.

### ii. Plaintiffs' choice of venue and UHS's estoppel claim

As a further initial concern, the Court notes that a plaintiff's choice of venue "is not an independent factor within the . . . § 1404(a) analysis." *Volkswagen II*, 545

F.3d at 314 n. 10. Instead, the plaintiff's choice simply bolsters the requirement that a defendant seeking transfer must show that a proposed transferee venue is "clearly more convenient." *Id.* at 315. Plaintiffs' choice of venue is addressed peripherally here, however, to respond to UHS's argument that Plaintiffs should be estopped from favoring the Corpus Christi Division as a result of related prior litigation heard in the Hidalgo County District Court[2] and in the McAllen Division. *See* Dkt. No. 5 at 2-5; Dkt. No. 20 at 8.

"The doctrine of judicial estoppel prohibits parties from deliberately changing positions according to the exigencies of the moment; it is designed to protect the integrity of the judicial process." *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 333 (5th Cir. 2007). "Judicial estoppel has three elements: (1) The party against whom it is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *In re Flugence*, 738 F.3d 126, 128 (5th Cir. 2013). "Because judicial estoppel is equitable in nature, trial courts are not *required* to apply it in every instance that they determine its elements have been met." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 272 (5th Cir. 2015).

In brief, UHS argues in its motion to transfer that because the lead plaintiff in this action previously filed a case in Hidalgo County District Court "pleading the same grievances arising out of the same lien forming the basis of this lawsuit," Platintiffs are now estopped from arguing that the McAllen Division is inconvenient. Dkt. No. 5 at 4. In support of this position, UHS states: "A party can be estopped from asserting that one venue is inconvenient where it previously argued the opposite in a separate case." Dkt. No. 5 at 4. Yet UHS cites to no relevant precedent to bolster this claim, and the Court is not aware of any that may exist. Indeed, the very case UHS cites to in support of its estoppel argument, an unpublished case from the Eastern District of Pennsylvania, undermines UHS's

---

[2] The Court notes for the record that the "Hidalgo County District Court" is a Texas state court located geographically within the McAllen Division of the U.S. District Court for the Southern District of Texas.

position. The plaintiff in this case claimed that defendants should have been judicially estopped from arguing the inconvenience of transfer to a certain federal venue, on the basis that in a prior, related action defendants sought transfer to precisely that venue. *See Copley v. Wyeth*, 2009 WL 2160640 at \*2-3 (E.D. Penn. July 19, 2009). The court rejected this argument, however, noting that in the prior action defendants never argued that the potential transferee venue "was the *only* appropriate forum," or "would be the proper venue for *any and all* future [related] litigation." *Id.* (emphasis original).

Similarly, it is not clear to the Court from the evidence offered here by UHS why Plaintiffs in this action should be bound by the choice of one lead plaintiff to litigate his prior personal injury case, or any other case, in a particular forum.[3] Additionally, the Court is unwilling to find that Plaintiffs' venue arguments in this case are "plainly inconsistent" with the specific arguments UHS has noted were made by the lead plaintiff in prior litigation. The fact that this lead plaintiff assented to a particular venue in a prior action does not per se bar him from now proffering that another venue is preferable and more convenient. Venue may be proper in multiple judicial districts and divisions, a fact reflected in the language of § 1404(a) itself. At issue here is not whether this case could have been brought in the McAllen Division—as discussed above, that threshold inquiry is satisfied—but rather, in the context of this litigation, whether the McAllen Division is a more convenient venue than the Corpus Christi Division.

### iii.  Balancing § 1404(a)'s convenience factors

Analyzing the four private interest factors inherent in § 1404(a)'s convenience analysis, the Court finds three are non-neutral: the ease of access to sources of proof, the availability of compulsory process, and the cost of attendance of willing witnesses. Of the four public interest factors the Court must consider, it finds that

---

[3] The Court acknowledges that in its initial motion to transfer venue, Dkt. No. 5, UHS was responding to the initial complaint in this action, Dkt. No. 1, which was filed only by lead plaintiff Rodolfo Garza. Yet UHS's reply brief supporting its motion to transfer venue, Dkt. No. 20, implicitly reiterates the substance of the estoppel arguments raised in UHS's initial motion, Dkt. No.5, despite the addition of other named plaintiffs to this action prior to the filing of UHS's reply. For this reason, the Court addresses UHS's estoppel arguments from both its initial motion and its reply.

only one is non-neutral: the local interest in having localized interests decided at home. Balancing all of these non-neutral factors, the Court finds that UHS has not met its burden to show that the McAllen Division is a clearly more convenient venue than the Corpus Christi Division.

§ 1404(a)'s private interest factors

*(i)        Ease of Access to Sources of Proof*

Of § 1404(a)'s private interest factors, the Court finds that the first factor addressing ease of access to proof weighs slightly against transfer to the McAllen Division. This factor addresses "documents and physical evidence." *Volkswagen II*, 545 F.3d at 316. Potentially relevant physical evidence cited by the parties includes: the personal injury records and "records of RICO-related contact" allegedly held by Plaintiffs' former personal injury attorneys, Dkt. No. 14 at 7; medical and hospital billing records held by UHS, Dkt. No. 14 at 7, Dkt. No. 20 at 2; and records held by Alegis, a non-party that files liens on behalf of UHS,[4] Dkt. No. 20 at 2.

As to UHS's medical and billing records, the parties seem to agree that these records are located either in Virginia, where UHS has a document storage facility, or are stored electronically by UHS and its affiliates. Dkt. No. 14 at 7, Dkt. No. 20 at 2, Ex. R. Neither of these facts suggests that either the Corpus Christi Division or McAllen Division is more convenient with respect to these UHS records. As to any records Plaintiffs might seek from Alegis, these are located at Alegis's offices in The Woodlands, Texas. Dkt. No. 20 at 2. As Plaintiffs note, The Woodlands, a Houston suburb, is more than 100 miles farther from the McAllen Division than the Corpus Christi Division. Dkt. No. 7 at 10 n.4. Any records located in Alegis's offices, therefore, are relatively more convenient to the Corpus Christi Division than to the McAllen Division.

Plaintiffs allege the records held by their personal injury attorneys are located at these attorneys' offices in Corpus Christi. Dkt. No. 14 at 7. UHS asserts

---

[4] The Court notes that the non-party UHS refers to as "Alegis" here appears to be the same non-party Plaintiffs refer to as the "Turek Law Firm, P.C.," discussed *infra. See* Dkt. Nos. 20 at 2 and 14 at 8-9. The Court cites here to UHS's representations about "Alegis," however, because UHS admits to the location of physical evidence held by this entity in The Woodlands.

that these records are the property of the client Plaintiffs themselves, who reside in Hidalgo County and can produce them there. Dkt. No. 20 at 2. Defendant is correct that, in Texas, "the entire contents" of Plaintiffs' personal injury files belong to them, and that they can request these files be turned over. *See, e.g. Resolution Trust Corp. v. H----, P.C.*, 128 F.R.D. 647 (N.D. Tex. 1989). Still, it is unclear whether this matters for the purposes of § 1404(a)'s "ease of access" inquiry, which focuses on the *location*, not the ownership, of documents. *See In re Radmax*, 720 F.3d at 288. Even if Plaintiffs have a right to their records, the Court has no reason to disbelieve their assertion that these records are currently located in their attorneys' offices in Corpus Christi. Transferring this case to McAllen would therefore not eliminate the burden of transporting documents, but, at least with respect to records held by Plaintiffs' personal injury attorneys, would simply shift this burden to Plaintiffs. *See Continental Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1398 (S.D.Tex. 1994); *see also Spiegelberg*, 402 F. Supp. 2d at 789 ("[C]ourts should not transfer a case 'if the only practical effect is to shift inconvenience from the moving party to the non-moving party.")

> (ii)    *The availability of compulsory process*

The second private interest factor addresses the availability of compulsory process to secure witness attendance. According to Federal Rule of Civil Procedure 45, a subpoena may be served on any person within the district of the issuing court—but the court's subpoena power is limited with respect to nonparty witnesses who work or reside more than 100 miles from the courthouse. *See* Fed. R. Civ. P. 45(c)(1)(B)(ii), (d)(3)(A)(ii); *Volkswagen II*, 545 F.3d at 316. Here, Plaintiffs identify "six (6) specific individuals whose testimony they will require, and three companies whose representatives Plaintiffs will require testimony from." Dkt. No. 14 at 10. The six individual witnesses are all personal injury attorneys retained by the named Plaintiffs in separate litigation, whose offices are all located in Corpus Christi. *Id.* at 14. Two of the companies whose employees Plaintiffs anticipate calling as witnesses are based outside of Texas, while the Turek Law Firm, P.C. ("Turek"), the third, is located in The Woodlands. UHS does not identify any

individual uncontrolled witnesses it expects will testify in this litigation, but states instead—albeit in the midst of a discussion of 'the availability of proof' rather than 'the availability of witnesses'—that "the relevant witnesses located in McAllen are *every* health care professional allegedly providing excessive and unnecessary care, *every* clinician or employee entering allegedly fraudulent charge information, and *every* putative class member alleging these claims." Dkt. No. 20 at 3. Presumably, this is because "UHS owns no hospital in Corpus Christi. . . has no offices located in Corpus Christi. . . [and] has no employees in Corpus Christi." Dkt. No. 20, Ex. R.

Generally, the availability and convenience of non-party witnesses "is accorded greater weight in a transfer of venue analysis" than the convenience of party witnesses. *Spiegelberg*, 402 F.Supp.2d at 790. Plaintiffs have listed their former personal injury attorneys as their primary anticipated non-party witnesses located in Texas. Dkt. No. 14 at 10. UHS argues that according to Federal Rule of Civil Procedure 45(c), these attorneys are actually within the subpoena power of the McAllen Division because they regularly conduct business there, such that the location of their offices in Corpus Christi should not weigh in the Court's analysis under this factor. *See* Dkt. No. 20. Again, Rule 45(c) states that an uncontrolled witness can be compelled to attend a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c). UHS claims that each of Plaintiffs' six non-party witnesses "regularly transacts business in person" within the McAllen Division because "every one of them chooses to appear" in cases heard in Hidalgo County District Court. Dkt. 20 at 5. Yet UHS's own evidence on this point is weak, and does not convince the Court of the McAllen Division's ability to exercise compulsory process over the six non-party witnesses identified by Plaintiffs under Rule 45(c).[5] As to non-party witnesses UHS expects to call, the Court is hamstrung in its analysis of the

---

[5] Of the six attorneys, not one has appeared in a Hidalgo County court in 2016. *See* Dkt. No. 20, Exs. 1-6. Four have appeared fewer than four total times in Hidalgo County, with two appearing only once, in 1989 and 2012, respectively. *Id.* The remaining two have arguably appeared "regularly" in Hidalgo County, with one appearing six times between 2002 and 2015 and the other 24 times between 1988 and 2014—but it bears repeating that even of these two, neither appeared in Hidalgo County at any time within the last year. *Id.*

availability of compulsory process to secure their attendance in the McAllen Division for the simple reason that UHS has failed to name a single such witness. Thus, while it seems that compulsory process is available in the Corpus Christi Division to reach the personal injury attorneys based there who Plaintiffs anticipate calling as non-party witnesses, few if any uncontrolled witnesses UHS expects to testify in this case are within the absolute subpoena power of the McAllen Division. This private interest factor therefore weighs against transfer to the McAllen Division.

(iii)   *Cost of attendance for willing witnesses*

§ 1404(a)'s third private interest factor addresses the convenience of a potential venue to willing witnesses, and "is often recognized as the most important factor under § 1404(a)." *Spiegelberg*, 402 F.Supp.2d at 790. Convenience to witnesses depends on issues of distance and cost, and the Fifth Circuit has held that distances of over 100 miles are especially taxing. *Volkswagen II*, 545 F.3d at 317 ("When the distance between an existing venue for trial of a matter and a proposed venue ... is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.")

Plaintiffs have identified as potential witnesses their six personal injury attorneys based in Corpus Christi, two out-of-state companies, and representatives of Turek, the non-party based in The Woodlands. The convenience of the Corpus Christi Division as opposed to the McAllen Division is a wash for out-of-state witnesses. Meanwhile The Woodlands, a Houston suburb, is more than 100 miles closer to the Corpus Christi Division than the McAllen Division, rendering Corpus Christi the more convenient venue for any Turek witnesses per *Volkswagen II*. Finally, the Corpus Christi Division is clearly more convenient than the McAllen Division for Plaintiffs' six personal injury attorneys based in Corpus Christi.[6]

---

[6] The Court acknowledges UHS's protest that Fifth Circuit precedent establishes that "the location of counsel" is not a relevant factor in the § 1404(a) analysis. *See* Dkt. No. 20 at 2-3; *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). Yet the attorneys Plaintiffs identify here as in possession of certain books and records and as potential witnesses in this case *formerly* appeared as Plaintiffs' attorneys in separate litigation, and would be called in this case not to represent Plaintiffs, but

As for willing witnesses cited by UHS, again, the company asserts that "the relevant witnesses located in McAllen are *every* health care professional allegedly providing excessive and unnecessary care, *every* clinician or employee entering allegedly fraudulent charge information, and *every* putative class member alleging these claims." Dkt. No. 20 at 3. UHS further claims that "every UHS employee or agent working at [its] Hidalgo County hospitals would be inconvenienced by Corpus Christi." Dkt. No. 20 at 9. Yet as Plaintiffs note, little weight is afforded to the convenience of individuals employed by a party seeking to transfer venue. *See, e.g., Continental Airlines,* 805 F.Supp. at 1397 (holding that where the "key witnesses are . . . employees of the party seeking transfer, their convenience is entitled to less weight because that party will be able to compel their testimony at trial.") Additionally, UHS has failed to identify with any specificity particular witnesses, willing or unwilling, employee or non-party, it anticipates may participate in this litigation. UHS argues that it has no duty pursuant to § 1404(a) to identify the witnesses it expects to call beyond referencing "*every*" individual potentially implicated in this litigation, citing to *Volkswagen II* and another Fifth Circuit case, *In re Genentech,* 566 F.3d 1338 (5th Cir. 2009). This Court, however, does not agree with UHS's interpretation of these cases,[7] and consequently, finds that UHS has failed to show that the McAllen Division is a clearly more convenient venue than the Corpus Christi Division for willing witnesses.

---

instead to testify as to the RICO-related conduct Plaintiffs allege against UHS. In other words, the fact that these individuals were at one point representing Plaintiffs is incidental to their prospective role in this litigation.

[7] For instance, while *In re Genentech* held that a court analyzing the § 1404(a) convenience factors need not "evaluate the significance of the identified witnesses' testimony" beyond what the venue transfer statute requires, the court affirmed that a party moving for transfer must, at a minimum, *identify* individual potential witnesses and explain "the relevance and materiality of the information [such witnesses] may provide." *Id.* at 1343-44. Similarly, while *Volkswagen II* held that specific affidavit evidence attesting to the evidentiary importance of anticipated witness testimony was not required, it never established that movants seeking transfer under § 1404(a) have no duty to specifically identify potential witnesses. *Volkswagen II,* 545 F.3d at 317. In fact, in this case Volkswagen supported its motion to transfer venue by "submit[ing] a list of potential witnesses that included the third-party defendant, accident witnesses, accident investigators, treating medical personnel, and the medical examiner," and by including affidavits from two potential witnesses attesting to the inconvenience of the proposed transferee venue. *Id.*

*(iv)    Other practical problems*

UHS does not address this fourth private interest factor, *see* Dkt. No. 5 and Dkt. No. 7, and the Court finds it neutral. *See Volkswagen II*, 545 F.3d at 317 (considering only contested factors).

<u>§ 1404(a)'s public interest factors</u>

*(i)    Administrative difficulties flowing from court congestion*

Both the Corpus Christi Division and the McAllen Division timely dispose of their civil cases; this first public interest factor is neutral.

*(ii)    Local interest*

UHS summarizes this putative class action as one arising "out of lien notices filed in Hidalgo County, against Hidalgo County residents, securing charges for medical care provided in Hidalgo County." Dkt. No. 10. By contrast, Plaintiffs assert that the operative facts relating to their claims depend on "the RICO-related activities that make up the very crux of this case (phone calls, facsimiles, electronic mail, and U.S. mail)" which "occurred in Corpus Christi." Dkt. No. 13 at 13. Specifically, Plaintiffs allege that venue in Corpus Christi serves localized interests on the basis that UHS "and its agents sought to collect unlawful liens within Corpus Christi, through hijacking Plaintiffs' personal-injury claims being litigated by Corpus Christi attorneys." *Id.* The Court finds that the scale of the conduct alleged by Plaintiffs, as well as the fact that this case is a purported class action potentially involving state-wide activities, mitigates against finding that the "localized interests" which matter most here would be best served by transferring this case to the McAllen Division.

*(iii)    Familiarity of forum with the law and (iv) Avoidance of unnecessary
       problems of conflict of laws*

As UHS is requesting intra-district transfer, these third and fourth public interest factors are neutral.

Weighing the private and public interest factors and the record before it, the Court finds that UHS has failed to meet its burden to show that this case should be

transferred to the McAllen Division for reasons of convenience. The Court therefore **DENIES** UHS's Motion to Transfer Venue, Dkt. No. 5.

## IV.  Conclusion

For the foregoing reasons, the Court: (i) **DENIES** UHS's Motion to Strike, Dkt. No. 17, and (ii) **DENIES** UHS's Motion to Transfer Venue, Dkt. No. 5.

It is so ORDERED.

SIGNED this 20th day of December, 2016.

Hilda Tagle
Senior United States District Judge